IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Chester County Sports Arena**<br>v.<br>**The Cincinnati Specialty Underwriters Insurance Company;** | **No. 20-2021** |
| **Milkboy Center City LLC,**<br>individually and on behalf of all others similarly situated,<br>v.<br>**The Cincinnati Insurance Company et al;** | **No. 20-2036** |
| **Cornerstone Warrington, Inc. et al**<br>v.<br>**The Cincinnati Insurance Company;** | **No. 20-2398** |
| **Stone Soup, Inc.,**<br>individually and on behalf of all others similarly situated,<br>v.<br>**The Cincinnati Insurance Company** | **No. 20-2614** |

**MEMORANDUM RE: DEFENDANT'S MOTIONS TO DISMISS**

**Baylson, J.**                                                          **March 30, 2021**

I.     **INTRODUCTION**

All Plaintiffs in these four cases filed Complaints against the same Defendant insurer

alleging that the insurer wrongfully denied coverage for Plaintiffs' business losses related to the

COVID-19 pandemic. Defendant The Cincinnati Insurance Company and related entities

("Cincinnati")[1] have filed a Motion to Dismiss the Plaintiff's Complaint under Rule 12(b)(6) in

---

[1] Additional named Defendants in the Milkboy Complaint are The Cincinnati Casualty Company,
The Cincinnati Indemnity Company, and The Cincinnati Financial Corporation. The Casualty

each of four cases brought by Plaintiffs Milkboy Center City LLC, ("Milkboy"), Stone Soup, Inc. ("Stone Soup"), Chester County Sports Arena ("Chester County"), and Cornerstone Warrington, Inc., Cornerstone Health & Fitness, Cornerstone New Hope LP, Conehopa, LLC, and The Event Center by Cornerstone (collectively "Cornerstone").

The fundamental question for the Court to consider is whether a physical loss or damage constituting a "Covered Cause of Loss" occurred under Cincinnati's Insurance Policies.

This Court's Order dated December 22, 2020 consolidated the Milkboy and Stone Soup actions. (Order, ECF 23, No. 20-2036). Chester County and Cornerstone are separate cases but present the same factual and legal issues.

## II.    BACKGROUND

### a.   The Relevant Insurance Policy Provisions

Plaintiffs Milkboy, Stone Soup, and Chester County hold "all-risk" insurance policies issued by Cincinnati that include coverage extensions for Business Income, Extended Business Income, Extra Expense, and a Civil Authority provision. (Compl. ¶ 2, ECF 1).[2]  The  language of the policies is identical in all material clauses.  There are no relevant exclusions included in the policies. The policies and their extensions require Cincinnati to pay the insured for the loss of business income sustained during the suspension of operations due to a "Covered Cause of Loss." (Id. ¶ 16). The policies' general coverage provision reads:

> We will pay for the direct "loss" to Covered Property at the "premises" caused by
> or resulting from any Covered Cause of Loss.

_____

Company and Indemnity Company are subsidiaries of The Cincinnati Insurance Company, and The Financial Corporation is the parent corporation of The Cincinnati Insurance Company.

[2] For efficiency, this Memorandum cites to the docket in Milkboy (20-cv-2036) when the pleadings have no material differences. When one party is specifically differentiated, citations are made to the relevant docket.

(Mot. to Dismiss, Ex. A at 37,[3] ECF 14-1, No. 20-2036). More specifically, the Business Income

provision states:

> We will pay for the actual loss of "Business Income" and "Rental Value" you
> sustain due to the necessary "suspension" of your "operations" during the "period
> of restoration." The "suspension" must be caused by direct "loss" to property at a
> "premises" caused by or resulting from any Covered Cause of Loss.

(Id. at 52). The Extended Business Income provision provides:

> For "Business Income" other than "Rental Value," if the necessary "suspension" of
> your "operations" produces a "Business Income" or Extra Expense "loss" payable
> under this Coverage Part, we will pay for the actual loss of "Business Income" you
> sustain and Extra Expense you incur during the [relevant period.]
> . . .
> Loss of "Business Income" must be caused by direct "loss" at the "premises"
> caused by or resulting from any Covered Cause of Loss.

(Id. at 54). Further, the Extra Expense provision reads:

> We will pay Extra Expense you sustain during the "period of restoration." Extra
> Expense means necessary expenses you sustain . . . during the "period of
> restoration" that you would not have sustained if there had been no direct "loss" to
> property caused by or resulting from a Covered Cause of Loss.

(Id. at 53). The policies also include a Civil Authority provision:

> When a Covered Cause of Loss causes damage to property other than Covered
> Property at a "premises," we will pay for the actual loss of "Business Income" and
> necessary Extra Expense you sustain caused by action of civil authority that
> prohibits access to the "premises", provided that both of the following apply:
>
> > (a) Access to the area immediately surrounding the damaged property is
> > prohibited by civil authority as a result of the damage; and
> >
> > (b) The action of civil authority is taken in response to dangerous physical
> > conditions resulting from the damage or continuation of the Covered Cause
> > of Loss that caused the damage, or the action is taken to enable a civil
> > authority to have unimpeded access to the damaged property.

(Id.). Finally, two key terms in the policies are explicitly defined:

---

[3] The page numbers listed in citations to the policies are the bates-stamped numbers at the
bottom of the page.

> Covered Cause of Loss means direct "loss" unless the "loss" is excluded or limited
> in this Coverage Part.
>
> "Loss" means accidental physical loss or accidental physical damage.

(<u>Id.</u> at 39, 72).

The fourth plaintiff, Cornerstone, holds three policies with Cincinnati. Two of those policies have language which is identical in all material respects to the policies held by Milkboy, Stone Soup, and Chester County, as described above. Cornerstone's third policy contains slightly different language.  The general coverage provision reads:

> We will pay for the direct physical "loss" to Covered Property at the "premises"
> caused by or resulting from any Covered Cause of Loss.

(Mot. to Dismiss, Ex. C at 49, ECF 5-6, No. 20-2398). The Business Income provision states:

> We will pay for the actual loss of "Business Income" and "Rental Value" you
> sustain due to the necessary "suspension" of your "operations" during the "period
> of restoration." The "suspension" must be caused by direct physical "loss" to
> property at a "premises" caused by or resulting from any Covered Cause of Loss.

(<u>Id.</u> at 62). The Extended Business Income provision provides:

> For "Business Income" other than "Rental Value," if the necessary "suspension" of
> your "operations" produces a "Business Income" or "Extra Expense" "loss"
> payable under this Coverage Part, we will pay for the actual loss of "Business
> Income" you sustain and Extra Expense you incur during the [relevant period.]
> . . .
> Loss of "Business Income" must be caused by direct physical "loss" at the
> "premises" caused by or resulting from any Covered Cause of Loss.

(<u>Id.</u> at 64). Further, the Extra Expense provision reads:

> We will pay "Extra Expense" you incur during the "period of restoration."
> . . .
> We will pay "Extra Expense" to repair or replace any property, or to research,
> replace, or restore the lost information on damaged "valuable papers and records"
> only to the extent it reduces the amount of "loss" that otherwise would have been
> payable under this Coverage Part.

(<u>Id.</u> at 63). The Civil Authority provision states:

4

> We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur caused by action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises," caused by or resulting from any Covered Cause of Loss.

(Id.). Finally, two key terms in the policies are explicitly defined:

> Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless [exclusions apply.]

> "Loss" means accidental loss or accidental damage.

(Id. at 51, 80).  Any differences in the wording of the policies are not material to the legal issues.

### b.  The Insurance Claims Filed by Plaintiffs

After suspending their operations due to government-ordered restrictions aimed at preventing exposure to the novel coronavirus pandemic, which closed down a great deal of commerce in the United States, Plaintiffs each filed a claim under their policies with Cincinnati. All the claims were denied. (Compl. ¶ 4).

All Plaintiffs allege that they experienced a "Covered Cause of Loss" due to the government's Closure Orders, which "operate as a blockade that prevents employees and patrons from entering and operating the business for its intended purpose." (Id. ¶ 22). Plaintiffs allege that this renders Cincinnati's denial of coverage improper. (Id. ¶¶ 16-17).

In the Milkboy and Stone Soup Complaints, Plaintiffs bring a class action suit against Cincinnati under Fed. R. Civ. P. 23 seeking relief under two counts: breach of contract and a declaratory judgment. (Id. ¶¶ 26, 37-56).

Chester County has filed suit seeking a declaratory judgment (1) determining "whether the government-ordered restrictions constitute a prohibition of access to Plaintiff's Insured Property" (a Covered Cause of Loss), and (2) affirming that the restrictions trigger coverage under the policy. (Am. Compl. ¶¶ 45-46, ECF 2, No. 20-2021).

Cornerstone has pled three claims for relief, two for breach of contract, and one for bad faith. (Compl. ¶¶ 28-50, ECF 1, No. 20-2398).

## III.  DISCUSSION

### a.  Legal Standards

#### i.  Motions to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all allegations in the complaint . . . and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). For a plaintiff's complaint to survive a motion to dismiss, the factual allegations contained in the complaint, "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Complaints also must contain sufficient factual allegations to plausibly establish a claim for relief. In other words, the Court must be able to draw a reasonable inference that the defendant is actually liable. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts must limit deliberations on 12(b)(6) motions to the facts included in the actual complaint and its attachments, matters of public record, and authentic documents upon which the claims asserted rely. See, e.g., Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

#### ii.  Insurance Policies as Contracts

When insurance policies are relevant in cases where a court must apply Pennsylvania law, "traditional principles of contract interpretation" are followed "in ascertaining the meaning of

terms." Kurach v. Truck Ins. Exch. 235 A.3d 1106, 1116 (Pa. 2020). If the terms of a policy are unambiguous and clear, then they are given their plain meaning. Id. But if there is ambiguity in the terms, the ambiguity must be construed in favor of the policyholder. Id. In determining whether a term is ambiguous or not, a Court must assess whether the relevant term is, "subject to more than one reasonable interpretation when applied to a particular set of facts." Id. (quoting Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)). Policy language may not be stretched beyond its plain meaning to create an ambiguity. Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 164 (3d Cir. 2011). Under Pennsylvania law, reasonable expectations can prevail over the express terms of a contract, even if the terms of that policy are clear and unambiguous. Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994). However, the language of an insurance policy and its terms offer the best evidence in determining the reasonable expectations of the parties. See Allstate Ins. Co. v. McGovern, No. 07-2486, 2008 WL 2120722, *2 (E.D. Pa. May 20, 2008) (Kelly, J.).

### b. Parties' Arguments

#### i. Motion to Dismiss

The four Motions to Dismiss filed by Cincinnati raise the same general argument. Cincinnati argues that each of Plaintiffs' Complaints should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted, because Plaintiffs have not alleged any direct physical loss required under the policy to make a prima facie case of property insurance coverage. (Mot. to Dismiss at 2, ECF 14).

First, Cincinnati notes that under Twombly and Iqbal, unsupported legal conclusions contained in the Complaints—of which Cincinnati says there are many—are not assumed to be true at this stage of litigation. See Twombly, 550 U.S. at 555; Ashcroft, 556 U.S. at 678–79.

7

Cincinnati asserts that the virus did not cause a "direct physical loss to property" as required under the policy, but rather caused a purely economic loss. (Mot. to Dismiss at 11). Specifically, Cincinnati argues that Pennsylvania law requires a physical alteration to property in order for the direct physical loss requirement to be met. (Id.) Consequently, since there was no physical alteration to the Plaintiffs' property, Cincinnati argues there can be no Covered Cause of Loss. Cincinnati's alleges the Plaintiffs are asking the Court to extend insurance coverage beyond the bounds of Pennsylvania law and hold that purely economic damages are covered by the policies. Cincinnati presses that the Court should not reach this conclusion, which is contrary to longstanding principles of law. (Id. at 2). The Motion continues to address numerous alternative arguments for dismissal, but all arguments are predicated on the contention that there was no direct physical loss.[4] For that reason, Cincinnati maintains that Plaintiffs cannot plausibly make a claim for relief under the policy and that all Complaints should be dismissed.

## ii.   Plaintiffs' Responses in Opposition to Motion to Dismiss

Plaintiffs assert that they suffered a Covered Cause of Loss. Reminding the Court that "ambiguities should be construed in favor of coverage," Plaintiffs urge a broad interpretation of all-risk insurance policies. (Pls.' Opp'n to Mot. to Dismiss at 6-7, ECF 17). Noting that the policy covers "physical loss *or* physical damage," they contend that this disjunctive language indicates two separate meanings. (Id. at 8). Plaintiffs argue that the use of the word "or" loosens the strict requirement for a physical alteration to the property in order to find a Covered Cause of Loss because it creates an ambiguity that should be construed in favor of finding coverage. (Id. at 14).

---

[4] For example, Cincinnati argues that the ability of the virus to be cleaned demonstrates that it does not affect structural integrity, that the absence of a virus exclusion is irrelevant when there is no direct physical loss, and that there is no direct physical loss to other property or prohibition of access to the property as required under the Civil Authority provision. (Mot. to Dismiss at 17-20, ECF 14).

At bottom, Plaintiffs reiterate that a virus, and the Closure Orders issued in response to it, can constitute a physical loss when they prevent the use of property for its intended purpose. (Id. at 9).

Plaintiffs Milkboy and Stone Soup further argue that under Pennsylvania law, the reasonable expectations of the policyholder may supersede policy language denying coverage. (Id. at 24). So, even if the Court were to find that the policy language precluded coverage, it must address whether Plaintiffs reasonably expected to receive coverage under the policy. Bolstering this point, all Plaintiffs emphasize the policy's lack of a "virus exclusion" as an indication that Cincinnati did not intend to carve out an exception for this kind of circumstance, and Plaintiffs reasonably expected coverage. (Id. at 17).

In addition, Cornerstone echoes the argument detailed above regarding the broad interpretation of "physical loss *or* physical damage." Cornerstone adds that two of its three policies do not contain the word "physical" in the definition of "Covered Cause of Loss." See supra at 3-4. Accordingly, Cornerstone argues that even if the Court were to find that there is no direct physical loss or damage under the policy that explicitly covers direct physical losses, coverage should still be found under the other two policies because the omission of the word "physical" is significant and creates ambiguity that must be construed in the Plaintiff's favor. (Pl.'s Opp'n to Mot. to Dismiss at 10, ECF 8, No. 20-2398). Finally, on Cornerstone's count of bad faith, it argues that Cincinnati has met the statutory definition under 42 Pa. Con. Stat. § 8371 for wrongfully denying its claims.[5]

---

[5] Bad faith claims under this statute require: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005); Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).

iii.   Cincinnati's Reply

Countering the construction of "physical loss *or* physical damage" urged by Plaintiffs, Cincinnati asserts that the Court is being asked to find ambiguity where there is none. (Def.'s Reply at 2, ECF 19, No. 20-2036). It reiterates the argument that coverage only follows physical alteration to the property, and here, Plaintiffs only suffered economic losses. (Id. at 3). Cincinnati reasons that the virus and resulting Closure Orders did not cause a physical loss or damage, nor alter the structure of the property in any way, so there is no Covered Cause of Loss that triggers coverage. (Id. at 6-7). Moreover, Cincinnati asserts that Plaintiffs ignore that the damage or loss must be "to property" under the policy's terms, and argues that COVID-19 infects people, not property. (Id. at 2). Cincinnati maintains that because the direct physical loss requirement is not fulfilled, all claims of coverage must be dismissed. (Id. at 9-10).

In the Cornerstone case, Cincinnati replies that while the word "physical" does not appear in the terms of two of the policies, those policies still require "direct loss." And those same policies go on to define "loss" as "accidental physical loss or accidental physical damage," as all of the other Plaintiffs' policies do. (Def.'s Reply at 2, ECF 13, No. 20-2398). As such, Cincinnati makes the same direct physical loss argument it made in the other three cases to all of Cornerstone's claims. Likewise, Cincinnati similarly contends that the government orders that forced Cornerstone to shut down also do not constitute a direct physical loss. Accordingly, because there is no direct physical loss or damage triggering a Covered Cause of Loss, Cincinnati maintains that Cornerstone's claim of bad faith is moot. (Id. at 15).

c.   **Analysis**

i.   Relevant Case Law

The Court will grant Cincinnati's Motions to Dismiss because there are no facts alleged to plausibly constitute a "direct physical loss" as required by the policies. Neither the Pennsylvania Supreme Court nor the Third Circuit Court of Appeals has yet reviewed the issue of whether government-ordered restrictions in response to COVID-19 constitute a direct physical loss to property. However, there are a plethora of similar cases in district courts across the country, including our own. Despite some differences in the specific policy language at issue and the precise legal arguments being presented each case, nearly all have reached the same ultimate conclusion: a finding of no coverage.

In our District, Newchops Restaurant Comcast v. Admiralty Indemnity Co. and 4431, Inc. v. Cincinnati Insurance Co. support granting Cincinnati's Motions to Dismiss.

In Newchops, two Philadelphia restaurants were forced to limit their operations due to COVID-related government restrictions. See Nos. 20-1949, 20-1869, 2020 WL 7395153, *1 (E.D. Pa. Dec. 17, 2020) (Savage, J.). After the restaurants' coverage claims were denied under "all-risk" policies nearly identical to the Cincinnati's policies at issue before this Court, Judge Savage held that loss or damage had to be physical or structural, not merely economic, per the plain language of the policy. Id. at *5.

Similarly, the Court in 4431, Inc. held that government orders did not qualify as a "direct physical loss." See No. 5:20-cv-04396, 2020 WL 7075318, *10 (E.D. Pa. Dec. 3, 2020) (Leeson, J.). The Court cited a past decision ruling that economic losses alone did not warrant coverage under a "direct physical loss" policy provision. Id. at *11 (discussing Phila. Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280 (S.D.N.Y. 2005), which applied Pennsylvania law)). Newchops and

4431, Inc. are just two of a number of similar cases in the Eastern District, all of which have granted insurers' Motions to Dismiss under the theory that business interruptions due to COVID-19 restrictions did not constitute direct physical loss.

In Kahn v. Pennsylvania National Mutual Casualty Insurance Co., the Plaintiff operated a South Carolina restaurant forced to close as a result of government restrictions related to COVID-19. Kahn v. Pa. Nat'l Mut. Cas. Ins. Co., No. 1:20-cv-781, 2021 WL 422607, *1–2 (M.D. Pa. Feb. 8, 2021). Defendants issued an "all-risk" policy to the Plaintiff that specified coverage for "direct physical loss" and included a virus exclusion. Id. at *2–3. Despite the virus exclusion clause, Chief Judge Jones focused on the language of the policy, and found that "physical loss" was a clear and unambiguous term.  Id. at *5–6.  He held that a tangible issue with the physical structure of the premises is necessary to establish such a loss under Pennsylvania law.[6] Id. at *4–6 ("[T]he lack of a definition for an operative term . . . does not necessarily render the policy ambiguous.") (quoting Gemini Ins. Co. v. Meyer Jabara Hotels, LLC, 231 A.3d 839, 847–48 (Pa. Super. Ct. 2020)).

Other courts have granted motions to dismiss in similar cases due to virus exclusion clauses.  For example, in Wilson, a local lawyer filed suit after COVID-19 restrictions forced her to close her law office and her insurance company denied coverage under the firm's business insurance policy. See Wilson v. Hartford Cas. Co., No. 20-3384, 2020 WL 5820800, *2 (E.D. Pa. Sept. 30, 2020) (Robreno, J.). Granting the insurer's Motion to Dismiss, the Court found that the virus exclusion in the policy applied to the Plaintiff's claim and precluded coverage. Id. The Court declined to address whether the language of the policy would have covered the Plaintiff's claim

---

[6] See Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 235–36 (3d Cir. 2002) (distinguishing between a building that is physically unusable and one that is contaminated but still physically safe to inhabit; and holding that a physical loss has not occurred if a physical structure has not lost its utility).

12

because the virus exclusion made that issue moot. Id. The policies at issue here do not include
virus exclusion clauses.

In the instant case, the Plaintiffs heavily rely on Studio 417, Inc. v. Cincinnati Insurance
Co., 478 F. Supp. 3d 794 (W.D. Mo. 2020) in their arguments for denial of the Motions to Dismiss.
Studio 417 has similar facts to the other business interruption cases, except that plaintiffs there
alleged that the virus itself caused the requisite loss to property. See id. at 800. The Court denied
Defendant's Motion to Dismiss, applying a broad definition of "direct physical loss" and finding
that the presence of the virus itself provided a basis for coverage. Id. at 800-02. As far as this
Court is aware, Studio 417 is the only COVID-19 business interruption case where a federal court
denied the insurer's motion to dismiss. Recently, a Pennsylvania state court denied a similar
motion in Smile Savers Dentistry v. CNA and Valley Forge Insurance, No. GD-20-006544, (Pa.
Ct. Com. Pl. Mar. 22, 2021). The court pointed out that "[t]he interpretation of the phrase 'direct
physical loss of or damage to property' [wa]s the key point of the parties' dispute." Id. at 10. It
concluded that the plaintiff's "loss of use of its property was both 'direct' and 'physical'" and that
"[t]he spread of COVID-10, and a desired limitation of the same, had a close logical, causal, and/or
consequential relationship to the ways in which Plaintiff materially utilized its property and
physical space." Id. at 14.

ii.   Application to the Cincinnati Insurance Policies

The cases granting dismissal demonstrate that the policies' requirement of "direct physical
loss" is, by itself, sufficient to deny coverage on the facts before the Court. The explicit terms of
the relevant policies require a "direct physical loss" by virtue of the definitions for "Covered Cause
of Loss" and "Loss." Government orders in response to a virus simply do not fit this physicality
requirement. Under Pennsylvania law, clear and unambiguous terms (like "direct physical loss")

13

must be given their plain meaning, and when there is no alteration to a physical structure, Third Circuit precedent points in the direction of finding no physical loss. See Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co., 311 F.3d at 235–36. A contrary holding would require expanding "direct physical loss" beyond its plain meaning to encompass purely economic loss. Therefore, Plaintiffs' contention that they have suffered a "Covered Cause of Loss" fails.

The Court finds the Studio 417, Inc. and Smile Savers decisions unpersuasive.  First, the Court notes that it is not bound by either authority.  See, e.g., Goldstein v. Am. States Ins. Co., No. 18-3163, 2018 WL 6198463, *4 (E.D. Pa. Nov. 28, 2018) (decisions of the Court of Common Pleas and other federal district courts are not binding authority) (Baylson, J.).  Next, the other courts' willingness to find a "direct physical loss" appears contrary to the plain language of the policies, especially when compared to similar cases in the Third Circuit.  Finally, the two decisions were entered outside of the Third Circuit and stand against the overwhelming majority of cases across the country deciding the same issue. All of these factors limit the persuasive value of these two cases' reasoning and result.

Finding coverage in the four cases presently before the Court would not only rule against the weight of persuasive authority but would also stretch the phrase "direct physical loss" beyond its plain meaning.

### d.  Leave to Amend

The Court will deny all Plaintiffs the leave to amend.  Given the legal principles discussed in this Memorandum, the Court believes any amendments to the Complaints would be futile.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Cincinnati's Motions to Dismiss will be **GRANTED** with prejudice.

14

**BY THIS COURT:**

_____

**MICHAEL M. BAYLSON**
**United States District Court Judge**

O:\CIVIL 20\20-2398 Cornerstone Warrington v Cincinatti Ins\20210329 CinInsMemorandum.docx